### 10055

### EARGLE v. SUMTER LIGHTING CO.

(96 S. E. 909.)

1. TRIAL—SUPPLYING DEFICIENCIES IN EVIDENCE—NONSUIT.—Though a nonsuit should have been granted at close of plaintiff's testimony, yet, if deficiency of evidence was supplied either on direct or cross-examination of defendant's witnesses, neither a nonsuit nor a directed verdict could be granted at conclusion of all the testimony.

2. EVIDENCE—SUFFICIENCY—SOURCE.—It is immaterial from whose witnesses the evidence in support of an element of damages or of a cause of action or defense may come, as either party may make out or strengthen his case or defense on the examination of his adversary's witnesses.

3. TRIAL — QUESTION FOR JURY — PUNITIVE DAMAGES.—Even if defendant's specific motion for a nonsuit as to punitive damages were granted, yet, if sufficient evidence to carry that issue to jury was brought out on direct or cross-examination of defendant's witnesses, it would have been Court's duty to submit it to jury.

4. MASTER AND SERVANT—DANGEROUS AGENCIES—CARE REQUIRED—"ORDINARY CARE"—"DUE CARE."—Those employing such agencies as electricity must exercise the same degree of care to protect their employees as they must to protect the public, that meaning "ordinary care"—such care as an ordinarily prudent person should exercise in the circumstances—sometimes called "due care."

5. MASTER AND SERVANT—ACTION FOR INJURY—ELECTRICITY—EVIDENCE.—In action for death of defendant's engineer from contact with charged chain near a testing station, the exclusion of defendant's evidence that it insulated chains used on its street lamps was error, as any difference in circumstances and reasons for a different measure of precaution is a matter of explanation by evidence.

6. NEGLIGENCE — CARE REQUIRED — DEGREE. — The degree of care to be exercised in every case should be commensurate with the danger, and the greater the danger the greater the care required, and a very high degree of danger calls for a very high degree of care.

7. MASTER AND SERVANT—ACTION FOR DEATH—NEGLIGENCE—EVIDENCE.— In action for death of defendant's engineer from contact with charged chain hanging above a lamp-testing apparatus, wherein defendant offered evidence that it furnished rubber gloves, testimony of one who worked with deceased until eight months before accident that no gloves were then furnished was relevant.

8. EVIDENCE — EXPERT TESTIMONY — SAFE APPLIANCES. — In action for death of electric lighting company's engineer from contact with a charged chain hanging above a lamp-testing station, opinions of expert electricians that place and appliances were reasonably safe were admissible.

9. MASTER AND SERVANT—ACTION FOR INJURY — EVIDENCE — SUBSEQUENT REPAIRS.—In an action for death of electric lighting company's engineer from contact with a charged chain hanging above a lamp-testing station, evidence of repairs of alleged defects after the accident was inadmissible.

10. MASTER AND SERVANT—EVIDENCE — DEFECTS — SUBSEQUENT REPAIRS— PURPOSE.—In action for employee's death, plaintiff may show subsequent alterations or repairs so far as necessary to show that defective conditions existed at time of accident to aid jury in determining whether appliances were reasonably safe, but not to prove negligence as to conditions then existing.

11. TRIAL—INSTRUCTIONS—LIMITATION OF EVIDENCE.—Where it is necessary to show subsequent conditions or alterations to show that defective conditions existed at time of accident, the jury may be cautioned that the evidence is not admissible to prove negligence in conditions or appliances then existing.

12. COSTS—APPEAL—FAILURE TO PREPARE CASE.—On reversal of judgment, appellant would not be allowed to tax any costs or disbursements, where a "case" was not prepared as required by rules of Court.

Before MEMMINGER, J., Spring term, 1917.    Reversed.

Action by F. M. Eargle, as administratrix, etc., against the Sumter Lighting Company.    Judgment for defendant upon a directed verdict, and plaintiff appeals.

*Messrs. R. D. Epps* and *W. N. Graydon,* for appellant, cite: *As to the law in regard to granting nonsuits:* 81 S. C. 456; 86 S. C. 300; 88 S. C. 193; 95 S. C. 135; 97 S. C. 331; 98 S. C. 348; 98 S. C. 125.    *On a motion to direct a verdict the law is stronger against the party making the motion that it is on a motion for a nonsuit:* 85 S. C. 479; 96 S. C. 153; 91 S. C. 17.    *A verdict should not be directed where more*

*than one reasonable inference can be drawn from the testimony:* 99 S. C. 187; 98 S. C. 348; 191 U. S. 64; 48 L. Ed. 96; 100 Fed. 712. *As to the degree of care due by a party to those whom he employs to use machinery:* 69 S. C. 305; 90 S. C. 25; 92 S. C. 188; 95 S. C. 230; 25 S. C. ——. *One establishing a dangerous agency where others are liable to be must use due care in guarding it:* 95 S. C. 230; 105 S. C. 226; N. E. 639; 173 Mo. 654; 9 Neg. and C. C. An. 119; 2 L. R. A. (N. S.) 451; 26 L. R. A. (N. S.) 1195. *As to contributory negligence:* 233 U. S. 482. *As to the question of due care in constructing and maintaining the lamp in question:* 98 S. C. 125; 60 S. C. 153; 38 S. E. 430; 61 S. C. 488; 39 S. E. 715; 72 S. C. 421; 52 S. E. 113; 74 S. C. 234; 34 S. E. 373; 76 S. C. 286; 56 S. E. 949. *As to opinion evidence:* 74 S. C. 102; 19 S. C. 70. *Failure to use all usual appliances is a breach of duty:* 90 S. C. 25; 69 S. C. 307. *Failure of deceased to use gloves not conclusive as to contributory negligence:* 189 Mass. 1.

*Messrs. Lee & Moise, Purdy & Bland* and *John H. Clifton,* for respondent, cite: *As to nonsuit and directed verdict:* 23 S. C. 96; 106 S. C. 318; 107 S. C. 367; 78 S. C. 81; 93 S. C. 295; 93 S. C. 39. *The fact that other appliances than those used at the place of accident are used elsewhere is not competent as evidence:* 8th Enc. of Law 939; 46 Iowa 17; 73 Vt. 52; 50 Atl. 549 (Mo. App.); 82 S. W. 535; 139 Ala. 425; 36 So. 181; 131 Cal. 390; 63 Pa. 682; 17 Cyc. 283; 17 S. C. 129-134; 65 S. C. 26, and numerous cases cited. *Evidence as to repairs made subsequently to the injury is incompetent:* 20 Cyc. 616-618; 51 S. C. 222; 28 S. E. 193, 401; 29 Cyc. 617 (note); 77 S. C. 73; 144 U. S. 202, 207. *Where there is no evidence in a case sufficient to warrant a reasonable jury in basing a verdict upon, a nonsuit or a directed verdict should be granted:* 107 S. C. 367, and cases there cited. *As to opinion evidence:* 91 S. C. 538; 59 S. C. 311; 2 Elliott Ev., sec. 1036; 82 S. C. 71; 95 S. C. 9; 93 S. C. 128. *Admission of evidence is in the dis-*

*cretion of the Court, which will not be disturbed unless it be
shown that the party complaining was prejudiced thereby:*
98 S. C. 121; 98 S. C. 289; 130 U. S. 531.  *Further as to
the law of nonsuit:* 41 S. C. 388; 66 S. C. 483; 170 U. S.
671; 55 S. C. 483; 101 S. C. 517; 96 S. C. 228; 66 S. C.
302; 70 S. C. 470; 72 S. C. 126; 101 S. C. 493; 77 S. C.
328; 72 S. C. 346; 87 S. C. 213-14.  *A ruling to which a
party is entitled will not be denied because a wrong reason
was assigned therefor:* 104 S. C. 16.  *As to contributory
negligence:* 86 S. C. 69; 89 S. C. 506, and cases cited; 104
S. C. 452.  *The doctrine of res ipsa loquitur does not exist
in this State:* 6 L. R. A. (New Series) 352; 98 S. C. 379;
75 S. C. 103; 72 S. C. 403; 103 S. C. 102.

July 22, 1918.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

Plaintiff appeals from judgment on a verdict directed for
defendant.  The action is for damages for the death of A.
W. Eargle, plaintiff's intestate, caused by alleged delicts of
defendant, a corporation engaged in supplying electric lights
to the city of Sumter.  At the time of his death and for nine
years before, Eargle had been in defendant's service as an
engineer in charge of the steam engines at its power house,
and was, therefore, familiar with his surroundings, and also
with at least some of the dangers of the business in which he
was engaged.

Near the engine room where Eargle worked, there was a
small house in which oils and other supplies and accessories
were kept for the use of the engineer and others employed
about the place, and near the door of this house was a cooling
tower, which was a tank filled with water and elevated some
15 feet above the ground.  Some three months before the
accident, defendant's electrical engineer installed a testing
station under the cooling tower, the purpose being to test
arc lamps that had been used in lighting the streets and had

gotten out of order, after they had been repaired, to see if they were all right and fit to be put back into service on the streets. So far as it appears, there was no difference in the installation of the testing station and an ordinary station for a street light, except possibly in the insulation of the chain by which the lamp was raised into position and connected with the circuit, or disconnected and lowered to the ground. Therefore, if a lamp burned satisfactorily there, it was supposed to be fit for use anywhere. As there was almost a constant spray from the overflow of water in the cooling tower, the testing station was put under the tower, in order that the lamps might be tested in atmospheric conditions similar to those to which they would be subjected on the streets in rainy weather. The spray kept the supports of the tower and the ground beneath wet or damp; and there was testimony that, as water is a good conductor of electricity, this increased the danger of the electric current breaking through the insulation and passing through the chain so as to shock any one who might come in contact with it. The chain was fastened to one of the supports of the tower by one of its links being hooked over a spike driven in the support, so that about one foot of the chain swung free below the spike, and it was about the height of a man's shoulder above the ground, and within two feet of the door of the oil house. When a lamp was repaired and put into the testing station, it was left to burn there during the night, and, as Eargle was on duty at night, he was requested by the electrical engineer, and also by the linemen, whose duty it was to repair the lamps, to watch them and report how they burned. Late in the afternoon of February 5, 1916, the lineman repaired a lamp that had given trouble on the street, and put it in the testing station, and requested Eargle to watch it. About 11 o'clock that night Eargle was found dead in the door of the oil house, his body being partly within the house. There was evidence tending to prove that his death was caused by an electric shock transmitted through the chain which hung near the

door. As no one saw the accident, it is not certain how ·he came in contact with the chain. The trial Judge thought that he took hold of it to disconnect the lamp. But appellant contends that the evidence is also susceptible of the inference that he was going into the oil house for some purpose and accidentally came in contact with it. For obvious reasons, we express no opinion as to either theory. When found, he had been dead but a few minutes. There are some differences in the testimony of the several witnesses as to the conditions of the lamp and chain immediately and for some time after the accident. They generally agree that the light was flickering, sputtering, jumping, or fussing, as they varyingly expressed it. Some of them said that the chain was giving off sparks where it was fastened to the post; others said that the chain was sparking at other places; and others, that the sparking in the chain was intermittent, that the chain was not directly in contact with the post, but was a few inches from it, and that it sparked only when there was enough vibration in the lower end of it to bring it into contact with the post.·

At the conclusion of plaintiff's testimony, defendant moved generally for a nonsuit, which was refused. During the taking of defendant's testimony, plaintiff's attorney sought to bring out, on cross-examination of defendant's witnesses, testimony which he thought would tend to show wilfulness and wantonness on the part of defendant. The trial Judge excluded it, saying that he had intended, when the motion for nonsuit was heard, to rule that there was no evidence of wilfulness and grant a nonsuit as to punitive damages, and that he would direct the jury to that effect. Plaintiff's attorney insisted that he had the right to prove facts entitling plaintiff to recover punitive damages, if he could, on cross-examination of defendant's witnesses; but the Court ruled otherwise and held, as to that issue, that defendant might consider a nonsuit granted. This was error. We have held in numerous cases that, even

though a nonsuit should have been granted at the conclusion of plaintiff's testimony, yet, if the deficiency of evidence was supplied either on direct or cross-examination of defendant's witnesses, neither a nonsuit nor a directed verdict could be granted at the conclusion of all the testimony. It is immaterial from whose witnesses—whether plaintiff's or defendant's—the evidence in support of an element of damage or of the cause of action or defense may come. Either party has the right to make out or to strengthen his case or defense on the examination of the witnesses of his adversary. And even if the defendant's motion had been specifically for a nonsuit as to punitive damages, and it had been granted, nevertheless, if sufficient evidence to carry that issue to the jury had been brought out on direct or cross-examination of defendant's witnesses, it would have been the duty of the Court to submit it to the jury.

Error is assigned in excluding evidence tending to prove that defendant insulated the chains that were used on the street lamps, on the ground that the issue here was whether defendant was guilty of negligence in failing to insulate at all or to properly insulate the chain connected with the testing station, and that evidence that better insulation was provided for the chains on the street lamps, or that they were insulated, while that at the testing station was not, did not tend to prove the issue. Defendant's attorneys contend that there was no error in this ruling, because the circumstances and conditions were different; that the chains connected with the street lamps ought to have been more carefully insulated than that connected with the testing station, because the members of the public and even children might come in contact with the former, while only the employees of defendant would come in contact with the latter, which was on defendant's private grounds where the public had no right to be.

The law imposes on those who employ such agencies the duty of exercising the same degree of care for the protec-

tion of their employees that it imposes upon them for the protection of the public, and that is "ordinary care"—such care as an ordinarily prudent person should exercise in the circumstances—sometimes called "due care." We think the Court erred in excluding this testimony. While it would not be conclusive, yet it was relevant, because it tended to prove that defendant itself considered insulation of the chains a proper precaution under circumstances which were not made to appear to be so entirely different as to make it proper in the one case and not in the other. Any differences of circumstances and the reasons for a different measure of precaution is a matter of explanation by evidence, and, therefore, properly for the consideration of the jury. See *Sturdyvin v. Railway,* 98 S. C. 125, 82 S. E. 275, and cases cited.

In this connection, it may not be amiss to call attention to an error into which appellant's attorneys have fallen with respect to certain language found in some of our opinions with regard to the degree of care to be exercised in handling electricity. They say: "The law, as established by the decisions of this Court, is that it requires a very high degree of care, *and not simply ordinary care.*" (Italics ours.)

This Court has not held that the degree of care required is more than ordinary care. What we have held is that, in dealing with an agency known to be so dangerous and deadly, a very high degree of care is required; but that is nothing more than a different way of expressing what is axiomatic in the law; that the degree of care to be exercised in every case should be commensurate with the danger—the greater the danger, the greater the care required—that a very high degree of danger calls for a very high degree of care; and if the quotations cited by appellant from the opinions of this Court in *Parsons v. Electric Co.,* 69 S. C. 305, 48 S. E. 284, 104 Am. St. Rep. 800, and *Lundy v. Telephone Co.,* 90 S. C. 25, 72 S. E. 558, be attentively considered, it

will be seen that they do not warrant the construction put upon them by appellant.

Defendant's general manager testified, in support of the defense of contributory negligence and assumption of risk, that he had furnished rubber gloves for the use of the engineer two or three years before the accident, and that they were turned over to the chief engineer or his assistant, and were kept in the engineer's desk. In reply, plaintiff sought to prove by Stansill Smith that he worked with Eargle about three years, and until about eight months before the accident, and that rubber gloves were not furnished while he was there. The Court excluded the testimony on the ground that it was irrelevant, saying: "The question is whether rubber gloves were furnished to the party in question" (Eargle). This was error. The testimony was relevant, because it tended to contradict the testimony of the manager as to the furnishing of rubber gloves, which defendant alleges it furnished, but Eargle neglected to use.

The other assignments of error as to the admission and exclusion of evidence require only brief consideration. There was no error in allowing expert electricians to state their opinion that the place and appliances were reasonably safe. Nor was there error in excluding evidence tending to prove repairs of the alleged defects after the accident. That does not mean that a plaintiff may not show the conditions existing at the time of the accident; and, therefore, he may show subsequent alterations, in so far as it may be necessary to do so, in order to show that defective conditions existed at the time of the accident. But such evidence is not admitted for the purpose of proving negligence in respect to the conditions existing at the time of the accident, but merely for the purpose of showing what they were, in order that the jury may determine whether they were reasonably safe. And where it becomes necessary to show subsequent conditions or alterations for the purpose

above stated, the jury may be cautioned that the evidence is not admissible to prove negligence in the condition or appliances existing at the time of the accident.   *Plunket v. Mfg. Co.,* 80 S. C. 310, 61 S. E. 431 ; 4 Labatt on Master & Servant, sec. 1591, and notes.

Perhaps it is unnecessary, in the view which we have taken of the case, to consider the errors assigned in directing the verdict.   As the case is to go back for a new trial, a discussion of the evidence and its tendencies would not be proper. But we may say simply that the evidence was susceptible of more than one reasonable inference on each of the grounds upon which the verdict was directed, except as to plaintiff's right to recover punitive damages, as to which the evidence was insufficient.

For the reasons stated, the judgment must be reversed; but the appellant will not be allowed to tax any costs or disbursements against respondent, because the "case" was not prepared as required by the rules of Court.

Judgment reversed.