14992

BOLEN v. STRANGE *ET AL.*

(6 S. E. (2d), 46)

June, 1939.

*Mr. L. A. Hutson,* for appellant

*Messrs. Nelson, Mullins & Grier* and *James A. Moss,* for respondents,

December 28, 1939.

The opinion of the Court was delivered by Mr. Justice Bonham.

The appellant sought in this action to recover damages for injuries which he alleges he suffered in the business premises of defendants, while there on business. The case came on to be heard by Judge Mann at the June, 1939, term of the Court of Common Pleas for Orangeburg County. At the conclusion of the testimony for plaintiff, a motion for nonsuit was granted. From this order the appeal comes to this Court.

The complaint alleges that defendants are engaged in business as meat packers, and in connection therewith, they butcher animals for others and prepare the bodies for delivery to the owners. For this service they make charges. That plaintiff is in the employ of Electric Meat Shop of Orangeburg, S. C., which is engaged in the business of butchering animals for the retail market. That it is the duty of plaintiff to take to the establishment of Carolina Packing Company cows and hogs to be butchered for the Electric Meat Shop. That on or about October 4, 1938, he took certain cows to the said packing company, and went back there later to get the "carcasses." According to custom, he went into the room where the butchering is done, in order to get the bodies of the cows, which were hanging on hooks around the walls above the heads of those who came for them. To facilitate this work, defendants have provided certain tables upon which the persons who come for the meat may stand. That on the date in question, plaintiff got on one of these tables and while taking a quarter of meat off the hook, slip-

ped and fell and suffered the described injuries to his legs. That his fall was due to the fact that there was some substance on the table which caused it to be slick, dangerous and unsafe. That defendants knew, or should have known, that a table in the damp room near the meat would have on it blood or some piece of meat, or substance of some kind that would make it dangerous for plaintiff and its customers to get thereon in taking down meat from the hooks, and had had the unsafe condition brought to their attention a number of times.

These allegations of negligence by defendants are reiterated in other allegations of the complaint. That plaintiff had no notice of these dangerous and unsafe conditions. That plaintiff's injuries were caused by the negligent, careless, willful and wanton acts of the defendants, their agents and servants, as aforesaid; and in failing to furnish the plaintiff and the public with a reasonably safe place to use, and from which to deliver to the plaintiff and the public the meats which defendants butchered for them.

For answer, defendants admit the allegations of Paragraphs 2 and 3. We reproduce folios 33 to 40 of their defense:

"IV. These defendants have no knowledge or information sufficient to form a belief as to the truth of so much of said paragraph 4 that alleges that on October 4, 1938, the plaintiff carried and delivered to the defendants a number of cows to be killed and dressed for the Electric Meat Shop for its retail market and therefore demand strict proof of same.

"Further answering said paragraph these defendants expressly deny that the plaintiff was required to take the dressed meat that was hanging on hooks from the ceiling of the slaughter room, but on the contrary these defendants allege that they have full charge of slaughtering and dressing the meat and deliver the meat to the public, that no one except the employees of the defendants are allowed in the slaughter room while cattle is being killed and these defend-

ants allege, on information and belief, that the plaintiff knew he had no right to be in said slaughter room, and if the plaintiff was in the said room at the time mentioned and described in the complaint herein, he was a trespasser on defendants' premises.

"V. These defendants have no knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 5 and 6 of said complaint and therefore deny the same.

"VI. Deny the allegations contained in paragraphs 7 and 8 of said complaint.

"VII. These defendants expressly deny the allegations contained in paragraphs 9, 10, 11 and 12 of said complaint.

"VIII. Expressly deny the allegations in paragraph 13 and each and every specification of negligence therein set forth.

"IX. Deny the allegations contained in paragraph 14 of said complaint.

"X. Deny each and every allegation in said complaint contained not hereinabove expressly admitted, denied or explained.

"For a second defense

"Further answering said complaint and as a further defense thereto these defendants allege that if the plaintiff was injured as described in the complaint herein, which is expressly denied, that such injuries were due to and caused by plaintiff's own contributory negligence and willfulness in that he failed to take any precautions for his own safety while attempting to unhook the carcass of meat from the hook on which said carcass was hanging, and failed to observe what he was doing and in a negligent and careless manner allowed himself to slip from the table in question, and that the negligent and careless acts of the plaintiff as aforesaid, contributed as a direct and proximate cause to plaintiff's alleged injuries, if any, and without which the same would not have occurred."

Appellant's exceptions suggest these questions: Error in granting the motion for nonsuit; error in holding that plaintiff's injuries were due to his sole negligence; error in holding that that plaintiff's negligence, combining and concurring with the negligence of the defendants, contributed to his injury, as a proximate cause, without which his injuries would not have occurred.

If the trial Judge was correct in the last stated proposition, it is decisive of the appeal.

It is needless to review all of the testimony, nor is it necessary to present a full synopsis of it. It appears to us that Judge Mann was correct when he said that the plaintiff had admitted himself out of Court.

The vital question is this: Did the plaintiff know of the alleged dangerous and unsafe conditions of which he complains If he knew that the floor or the table from which he fell was bloody or "slick" from the presence of some substance which might make it unsafe, and yet went upon it without taking proper care for his own safety, did his negligence in this particular combine and concur with the negligence of the defendants as a proximate cause of his fall and injury? If so, can he recover?

He, himself, testifies that he was familiar with the premises and the nature of the work done there, and with the nature of the work he had to do in taking the meat from the slaughter house. He has been employed in business of that sort from his youth up. He has been working in the Electric Meat Shop for about ten years. He said:

" * * * Those floors and tables are apt to be bloody. That fresh blood on the floors and tables will cause them to be slick." Folios 70, 71.

"Q. Where did you find your meat? A. It was hung up. The floor and table was wet.

"Q. How did you know that? A. Because I slipped down.

"Q. Did you see that? A. I was not paying attention until after I got hurt, because I had to get my meat. I had fourteen head of cattle to move from there. Had to get them

out right then or would have had to pay extra storage on them. Wasn't paying attention to the exact conditions. All I wanted was to get my meat out. I was only concerned about getting my meat out before five-thirty. *I looked at the table, saw that it was wet and had blood on it. I could see all that when I looked. I am an experienced hog butcher.* \* \* \* " (Emphasis added.) Folios 73-75.

"Q. How did you fall? A. I fell off the table.

"Q. Slipped? A. Must have.

"Q. Slipped on that blood? A. I guess so, I know I fell off." Folios 77-78.

" \* \* \* Carcasses drip blood on the tables. You can see that if you look. It is not hard to see. I looked. If the tables are wet, you could see it. All of that makes them slick. Anybody that works around there knows that they make these tables slick. No question about that." Folio 99.

Here is the proof, out of the mouth of the plaintiff, that he knew that fresh blood would make the tables slick; he knew that there was blood on the table upon which he stood. He paid no attention to the conditions; he was intent on getting his meat out before five-thirty, in order to avoid paying extra storage. Can there be any doubt that plaintiff assumed the risk of falling from the table? Can there be any doubt that his negligence combined and concurred with the negligence of the defendants as a proximate cause of his injuries, and without which they would not have occurred?

It is established law in this jurisdiction that one who explicitly, or implicitly, invites others on his premises for lawful purpose is not an insurer of their safety, but if unsafe conditions exist on the premises which are known to him, but unknown to them, he must warn them. *Bradford v. F. W. Woolworth Co.*, 141 S. C., 453, 140 S. E., 105.

It is equally well settled that one who, with knowledge of conditions, goes into danger, he assumes the consequences and, even though there be negligence on

the part of the other, if the complainant suffer hurt to which his negligence contributed as a proximate cause, without which it would not have occurred, he is barred of recovery.

In the case of *Blalock v. Graniteville Mfg. Co.*, 183 S. C., 247, 190 S. E., 709, the following is contained in the syllabus: "Cotton mill operative, walking on floor where he had been working, with knowledge that it had been made slippery by scouring with soapy water while he was in wash-room, though he could have more conveniently used another part of floor previously scoured, assumed risk of falling thereon, so as to bar recovery of damages from his employer for resulting injuries, in absence of emergency."

In the case of *Adcox v. Campbell Limestone Co. et al.*, 182 S. C., 106, 188 S. E., 657, 658, Mr. Justice Baker, for the majority of the Court, said: "It would appear logical that if the jagged tin protruding was so obviously a danger-ous thing that the appellants were negligent in not knowing about and repairing it, then it was so open and obvious a defect that the respondent in going upon the roof twice a day for the purpose of turning on and off the steam, and several times a day for inserting and pulling the hose out of the tank, should have seen and known about it, and if he did not see it and know about it, then he was guilty of con-tributory negligence in failing to observe due care for his own safety. *  *  *"

In our case, Bolen knew that there was blood on the table which made it slippery and that he might fall off, neverthe-less, he went ahead and climbed on it. He was negligent of his own safety, and was guilty of contributory negligence and is barred of recovery.

In the case of *McGuire v. Steinberg*, 185 S. C., 97, 193 S. E., 205, this was said in the unanimous opinion of the members of the Court then sitting: "Upon evidence disclos-ing that employee knew of unsafe condition of elevator, that he refused to ride on it from third to second floor, but that when he got to the second floor he deliberately and purposely put weight of part of his body upon it and caused

cable to snap, employee was guilty of contributory negligence amounting to willfulness and recklessness of such nature as to bar recovery." (Syllabus.)

Appellant alleges that after he suffered his injuries, the defendants ceased to require their customers to call for and take away the animals which they had butchered for them, and the packing company itself delivered the meat, and from this the plaintiff seeks to show negligence on the part of defendants at the time of plaintiff's injury. In the case of *Worthy v. Jonesville Oil Mill*, 77 S. C., 69, 57 S. E., 634, 635, 11 L. R. A. (N. S.), 690, 12 Ann. Cas., 688, the following statement of the prevailing law shows that the plaintiff's plea cannot avail him: " * * * The evidence was none the less irrelevant and within the reason of the rule as stated in *Columbia, etc., Railroad Co. v. Hawthorne*, 144 U. S., 202, 207, 12 S. Ct., 591, 36 L. Ed., 405, where it is said: 'But it is now settled, upon much consideration, by the decisions of the highest Courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant.' "

It is true, as a rule, that the question of contributory negligence is usually a mixed one of law and fact and is usually for determination by the jury. But it is also true that when the evidence admits of but one reasonable inference, it becomes a matter of law for the determination of the Court.

In the present case, we concur with the conclusion of the trial Judge that the evidence admits only of the reasonable conclusion he has reached. He was, therefore, not in error when he granted the motion for nonsuit.

The judgment is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTAR, BAKER and FISHBURNE concur.