273 F.2d 572
 M. Melinda BERRY, Administratrix of the Estate of Robert H. Berry, Deceased, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, and Carolina Power & Light Company, a corporation, Appellees.
 No. 7954.
 United States Court of Appeals Fourth Circuit.
 Argued November 11, 1959.
 Decided January 6, 1960.
 
 COPYRIGHT MATERIAL OMITTED William E. Chandler, Jr., Columbia, S. C. (James P. Mozingo, III, Darlington, S. C., on the brief), for appellant.
 David W. Robinson, Columbia, S. C. (A. Y. Arledge, Raleigh, N. C., and Robinson, McFadden & Dreher, Columbia, S. C., on the brief), for appellee Carolina Power & Light Co.; and A. L. Hardee, Florence, S. C. (Willcox, Hardee, Houck & Palmer, Florence, S. C., on the brief), for appellee Atlantic Coast Line Railroad Co.
 Before HAYNSWORTH and BOREMAN, Circuit Judges, and THOMSEN, District Judge.
 BOREMAN, Circuit Judge.
 
 
 1
 M. Melinda Berry, Administratrix of the estate of her son, Robert H. Berry, instituted this action against Atlantic Coast Line Railroad Company, hereinafter sometimes called "Railroad Company", and Carolina Power & Light Company, hereinafter sometimes called "Power Company", to recover damages for the wrongful death of her son allegedly due to the negligence of both defendants.
 
 
 2
 Railroad Company and Power Company joined in a motion for summary judgment based upon the pleadings, documents and proceedings in the case. Included among the pleadings and proceedings were the original complaint, amended complaint, second amended complaint, answers of the defendants to the complaints, a statement of Calvin O. Berry (who is hereinafter more fully identified) furnished to defendants' counsel by plaintiff's counsel, interrogatories propounded to plaintiff by the Power Company and answers thereto, interrogatories propounded by plaintiff to the Power Company and the Railroad Company and their answers thereto, interrogatories propounded to Wilhoit and St. Paul Mercury Indemnity Company (the connection of the latter with this case being hereinafter disclosed) and St. Paul's answers to interrogatories, a request by Power Company to plaintiff for admissions and plaintiff's responsive admissions, a plat, photographs, two affidavits of Calvin O. Berry dated June 6, 1959, and a deposition of the same Calvin O. Berry taken January 31, 1957.
 
 
 3
 In its order granting the motion for summary judgment, the District Court stated:
 
 
 4
 "After consideration of the evidence introduced on behalf of the parties, it is my opinion that it is perfectly clear that no issue of fact is involved and that inquiry into the facts is not desirable to clarify the application of the law. There does not appear to be any dispute as to the evidentiary facts in this case or as to the conclusion to be drawn therefrom. It is quite clear what the truth is and no genuine issue remains for trial. In my opinion there is no evidence of any actionable negligence upon which the plaintiff can recover against the defendants. * * *"
 
 
 5
 Robert H. Berry, sixteen years of age, was employed by Wilhoit Steel Erectors, hereinafter referred to as "Wilhoit". On December 3, 1955, he was directed by his employer to accompany his brother, another Wilhoit employee, Calvin O. Berry, to Revels Station, near Florence, South Carolina, to assist in unloading steel from a gondola railroad car which had been "spotted" on a railroad siding. The steel was consigned to Vulcraft Fabricators, hereinafter referred to as "Vulcraft".
 
 
 6
 At Revels Station, the main line of the Railroad Company runs in a south-north direction and at that point there is a siding consisting of two sidetracks. The second of these sidetracks, the one here involved, angles off from the first sidetrack in a northeasterly direction toward and then alongside a high voltage electric line of the Power Company. At the point where the second branches off from the first sidetrack, the distance between the track and the power line is about 70 feet. This distance decreases to approximately 27 feet 8.4 inches at the point where the railroad car was spotted for unloading.
 
 
 7
 Wilhoit had dispatched a crane mounted on a truck to the point of the unloading operations. Vulcraft provided the truck into which the steel was to be transferred from the railroad car. Easy access to the railroad car was had for the crane truck and the Vulcraft truck from a public highway in close proximity to the scene of operations. Calvin O. Berry, who was several years older than his brother Robert, and who had had two and one-half to three years' experience with Wilhoit, was in charge of crane operations. The two Berry brothers were the only Wilhoit employees on the job although other help was provided by employees of Vulcraft.
 
 
 8
 For the unloading operation, the crane was positioned alongside the gondola railroad car. The Vulcraft truck was placed on the other side of the crane so that the crane was between the railroad car and the Vulcraft truck. Both the crane and the Vulcraft truck were between the railroad car and the power line. So positioned, the crane could hoist the steel from the railroad car, swing its load in the direction of the power line, toward and over the Vulcraft truck, and deposit the steel in the truck.
 
 
 9
 Upon arriving at the job site with the crane, Calvin O. Berry carefully surveyed the surroundings, observed the power line and, with Robert Berry's help, removed a fifteen foot section of the boom of the crane so that the top of the boom, measured perpendicularly, was 28 feet from the ground. His reason for so doing, as stated in his deposition, was to reduce the danger of the operation and to keep the boom of the crane away from the electric wires. The crane truck was equipped with four outriggers designed to afford additional stability and to keep the crane truck from tipping as heavy loads were handled by the boom of the crane. Two of the outriggers at the rear of the crane truck were placed in position and blocked up but the two outriggers at the front were not used.
 
 
 10
 The crane and the Vulcraft truck having been so positioned, the unloading operation began. Calvin Berry, operating the crane, hooked on to a bundle of steel weighing between four and five tons, hoisted it from the railroad car, pivoted the crane in a counterclockwise direction toward the truck and lowered the steel to a level where Robert Berry and a Vulcraft employee, both of whom were standing on the ground, could steady it preparatory to depositing it in the Vulcraft truck. As the steel was being lowered it was swaying and Robert placed his hand on it, but the swaying of the load caused the crane to tilt toward the power line so that the steel cable running from the end of the boom to the hoisted steel came in contact with the power line. Robert was electrocuted from the charge of electricity carried through the cable of the crane into the steel and through his body into the ground.
 
 
 11
 The power line carried 22,000 volts between any two of the energized conductors and the voltage was 13,000 between any one energized conductor and the ground. The distance from the contacted electric wire to the ground was some 28 feet 3 inches and, as before stated, the distance on the ground from the near rail of the sidetrack to a point directly under the contacted wire was some 27 feet 8.4 inches. It appears that the railroad sidetrack was constructed in the year 1952 but the power line was constructed and maintained for many years prior thereto. It further appears that Calvin Berry was unfamiliar with Revels Station which was in a rural area; that upon arriving at the scene he observed the electric line and, even though he did not know its voltage, realized that a line carrying as much as 110 volts of electricity was dangerous; and that the cable would not have come in contact with the power line had the crane not tilted.
 
 
 12
 It is alleged in the plaintiff's second amended complaint and admitted in answers that the plaintiff received, under the provisions of South Carolina Workman's Compensation Act, Code 1952, § 72-1 et seq., $8,000 which was paid by St. Paul Mercury Indemnity Company as insurer for Wilhoit, Robert Berry's employer, and that said Indemnity Company is, by right of subrogation, first entitled to be repaid the sum of $8,000 out of any recovery in this action.
 
 
 13
 Plaintiff contends that the pleadings and proceedings properly before the court indicated evidence of negligence on the part of both the Power Company and the Railroad Company sufficient to create an issue of fact for jury determination and that it was error to grant the motion for summary judgment in favor of the defendants.
 
 Alleged Negligence of Power Company
 
 14
 Plaintiff urges that it is clearly within the realm of foreseeability that a railroad siding would be used to unload such materials as steel through the use of a crane. She charges that the Power Company would be liable for any injury resulting from the use of a crane since the Power Company knew, or should have known, of the potential hazards in permitting its electric lines to remain in such close proximity to the siding. Plaintiff further contends that if relocation of the power lines were not required, the Power Company should have insulated the wires or should have posted adequate warning signs. Plaintiff's contentions present the primary question for determination here, namely: Were the power lines in such close proximity to the railroad siding as to create generally a dangerous and hazardous condition to persons, including Robert Berry, unloading a railroad car of steel while exercising the prudence and care which the Power Company had a right to assume would be exercised?
 
 
 15
 Section 58-111, South Carolina Code of 1952, vests in the Public Service Commission the power to determine reasonable standards, classifications, regulations, practices and measurements of service to be furnished by public utilities. Section 24-112, South Carolina Code of 1952, provides that the Commission may make such rules and regulations not inconsistent with law as may be proper in the exercise of its powers or for the performance of its duties, all of which shall have the force of law. Pursuant to its authority, the South Carolina Public Service Commission has adopted and promulgated rules and regulations intended to specify, under varying circumstances, certain distances from the near rail of a railroad track within which electric power poles cannot be placed, and the minimum height of electric power lines above ground. Rule 14, 7 S. C. Code of 1952, pp. 817-819. The Rule states that the pole or tower carrying electric lines shall not be less than 12 feet from the near rail except, at sidings, not less than 7 feet from the near rail. The table of height requirements as set forth in Rule 14 provides that in rural areas electric power lines carrying 15,000 to 50,000 volts must be no less than 20 feet above the ground when the line runs in a public right of way. Clearly, the requirements as to the location of poles and lines are more than met by the Power Company in the instant case.
 
 
 16
 While we do not find, nor has our attention been directed to, any cases in which the Supreme Court of South Carolina has affirmatively held, as have courts in other jurisdictions,[1] that compliance with the requirements of such rules and regulations is prima facie evidence of the exercise of due care, the court, in Elliott v. Black River Elec. Co-op., 1958, 233 S.C. 233, 104 S.E.2d 357, 362, said:
 
 
 17
 "* * * compliance with the minimum clearance requirements was not conclusive evidence of due care * * *" under the circumstances. (Emphasis supplied). It may fairly be inferred from the quoted language that South Carolina recognizes that compliance, by an electric company, with pertinent rules and regulations is, at least, some evidence of the exercise of due care.
 
 
 18
 It is generally held and stated, as contended by the plaintiff, that those in control of a dangerous instrumentality, such as electricity, have a duty to exercise a very high degree of care to prevent injury to others. To so define and describe the requirement of care is merely a more forceful way of saying that ordinary care under the circumstances is required. "* * * The ordinary care required under the circumstances is relatively a high degree of care when put into practice." Elliott v. Black River Elec. Co-op., supra. See also Lundy v. Southern Bell Tel. & Tel. Co., 1911, 90 S.C. 25, 72 S.E. 558, 267; Eargle v. Sumter Lighting Co., 1918, 110 S.C. 560, 96 S.E. 909.
 
 
 19
 The test of the existence or absence of negligence, as set forth in the South Carolina decisions by which we are bound in this case, is not whether the Power Company should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable action or conduct by people in dangerous proximity to its high voltage line. Elliott v. Black River Elec. Co-op., supra. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable in the exercise of due care there is no liability. One is not charged with foreseeing that which could not reasonably be expected to happen. Woody v. South Carolina Power Co., 1943, 202 S.C. 73, 24 S.E. 2d 121, and cases cited therein.
 
 
 20
 We are of the opinion that there is nothing in the record to indicate that the Power Company failed to comply with its duty to exercise a very high degree of care. Aside from compliance with the rules and regulations of the Public Service Commission, a thorough study of the plats and photographs submitted indicates that the clearance between the railroad siding and the power line was more than ample to permit the safe unloading of the carload of steel by the use of a crane. Moreover, the deposition of Calvin Berry, an experienced crane operator, disclosed that he saw the power lines, recognized them to be power lines and, with knowledge that a line carrying only 110 volts of electricity is dangerous, took only two of several possible precautions to protect the workmen, including Robert Berry, from this known danger. While he could have positioned the Vulcraft truck and the crane so as to render negligible the possibility of dangerous contact with the power line, or could have made use of the outriggers at the front of the crane truck to afford added stability, or could have asked the Power Company to shut off the electric current while the men were working there, he chose only to shorten the boom of the crane and to set the outriggers at the rear of the truck. This conduct on the part of Calvin Berry is beyond the realm of reasonable foreseeability.
 
 
 21
 Plaintiff places great reliance upon Tobias v. Carolina Power & Light Co., 1939, 190 S.C. 181, 2 S.E.2d 686, wherein the court said:
 
 
 22
 "The liability of a person charged with negligence does not depend on the question whether with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission. * * * and the doer of the act cannot shelter himself behind the defense that the actual consequence was one that rarely follows from that particular act. * * *"
 
 
 23
 In that case, the plaintiff was injured when struck by an automobile and thrown against an exposed guy wire of the electric company. The electric company's pole was located about the center of the highway with two guy wires anchored to the ground, one on either side of the pole. Guards or boards around the guy wires had been maintained, but at the time of the accident no such guards were present. The electric company contended that it could not be expected to foresee the intervention of the negligent third-party automobile driver and especially was this true since the accident was such a peculiar or unusual one. It further contended that the complaint disclosed that the injury to the plaintiff was due to the independent efficient intervening acts of the third party. This contention, in itself, assumes original negligence on the part of the electric company but argues that the effect of the original negligence was rendered nugatory by the intervening negligence of a third party.
 
 
 24
 We are of the opinion that the Tobias case is clearly distinguishable from the case at bar. In its opinion, the court made no reference to original negligence except to say that the electric company should have foreseen that its negligence would probably result in injury of some kind to some one. The reason for the failure to challenge the fact that the electric company was guilty of original negligence is clear. The pole and guy wires were near the center of the road, and the electric company had indicated its acknowledgment of danger by taking steps in the past to place guards around the guy wires. In the case at bar, the Power Company maintained its lines at a distance from the railroad siding substantially greater than the minimum distance required in the rules and regulations. Since there is nothing to indicate that the Power Company was originally negligent, and concluding that it was not bound to reasonably foresee the acts of omission and the absence of caution on the part of Calvin Berry, no question of intervening negligence arises.
 
 
 25
 The test applied in Tobias is that liability follows for any injury which is a natural and probable consequence of the defendant's negligent acts or omissions. That test is no different from the test applied in numerous South Carolina cases — that an intervening negligent act does not relieve the original wrongdoer, if such act is reasonably foreseeable. See Burns v. Carolina Power & Light Co., 4 Cir., 1951, 193 F.2d 525; Ayers v. Atlantic Greyhound Corp., 1946, 208 S.C. 267, 37 S.E.2d 737; Hunter v. Boyd, 1943, 203 S.C. 518, 28 S.E. 2d 412; Pfaehler v. Ten Cent Taxi Co., 1942, 198 S.C. 476, 18 S.E.2d 331. Reasonable foreseeability requires only that one foresee those injuries which naturally and probably follow from his act or omission. Woody v. South Carolina Power Co., supra.
 
 
 26
 This court recently had occasion to decide a case arising under Maryland law, namely, Manaia v. Potomac Elec. Power Co., 4 Cir., 1959, 268 F.2d 793, 798, certiorari denied 80 S.Ct. 255, in which the facts are not wholly dissimilar from the facts in the instant case. There, a crane operator, after observing electric power lines spanning a public street, raised the boom of his crane dangerously close to the lines. As a result, the 33,000 volts of electricity arced to the boom of the crane killing two employees who were in contact with both the ground and the piece of equipment that was being hoisted. There, as here, the crane operator knew that the lines were electric lines. It was contended that the electric company should have done something more to warn the contractor and its employees of danger from the high voltage line. Speaking through Judge Haynsworth, this court held that the electric company had a right to assume that a construction company would not intentionally foul its lines without taking steps to ascertain the voltage carried by the lines. All indications were that the line was of high voltage and the court said that this should have put the contractor on notice of the potential danger. In applying the reasonable foreseeability test, the court said that the construction company's course of conduct, "* * * fraught with seemingly grave and obvious danger, while neglecting the equally practical alternatives which entailed no risk * * *", was beyond the bounds of anything which the electric company might reasonably have anticipated. (Emphasis supplied). We are of the opinion that this court would have reached the same conclusion in Manaia if controlled by the law of South Carolina rather than the law of Maryland. Applying this principle as announced in Manaia, it is clear that the acts, conduct and omissions of Calvin Berry were beyond the bounds of anything which might reasonably have been anticipated by the Power Company.
 
 
 27
 The plaintiff's contention that the Power Company was negligent in failing to insulate its wires or to post warning signs is equally without foundation or support in the record. In Weeks v. Carolina Power & Light Co., 1930, 156 S.C. 158, 153 S.E. 119, 123, the court, quoting from Corpus Juris, said:
 
 
 28
 "`The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places where people have a right to go on business or pleasure'. 20 C.J. 355."
 
 
 29
 There is nothing in the record here to indicate that persons, in the ordinary course of business or pleasure, would contact a wire some 28 feet from the ground and some 27 feet from the near rail of the siding. On the contrary, it appears that only by acts of negligent commission or omission would a person be brought in contact with the power line. Therefore, we reach the conclusion that the wires were amply insulated against human contact by their remote location and elevation above the ground. Croxton v. Duke Power Co., 4 Cir., 1950, 181 F.2d 306.
 
 
 30
 Nor would the failure to post warning signs render the Power Company negligent in this case. Before the unloading operation began, the crane operator was aware of the presence of the electric lines and was also aware of the potential hazards attending the unloading operation. This is fully demonstrated by his precautionary action taken in shortening the boom of the crane. Therefore, warning signs could have accomplished only what the operator already knew — that contact with the line should be avoided.
 
 Alleged Negligence of Railroad Company
 
 31
 Plaintiff alleges negligence on the part of the Railroad Company in constructing and maintaining a sidetrack in close proximity to a high voltage, uninsulated electric power line, and in spotting a carload of steel in close proximity to such power line knowing that the unloading of the steel would involve the use of a crane. Once again, plaintiff's contentions present the real question for determination, namely: Was the railroad car spotted in such close proximity to the electric power line as to create generally a dangerous and hazardous condition to persons, including Robert Berry, unloading the car of steel while exercising the prudence and care which the Railroad Company had a right to assume would be exercised?
 
 
 32
 The status of Calvin and Robert Berry was that of invitees. Having placed the gondola car of steel on its siding, the Railroad Company invited the consignee of the steel, Vulcraft, to unload the steel at that point and this invitation would extend to those persons, the employees of Wilhoit, engaged by Vulcraft to do the job. Under South Carolina law, it is well settled that one who explicitly, or impliedly, invites others on his premises for lawful purposes is not an insurer of their safety, but if unsafe conditions exist on the premises which are known to him, but unknown to the invitees, he must warn them. Baker v. Clark, 1958, 233 S.C. 20, 103 S.E.2d 395; Bolen v. Strange, 1939, 192 S.C. 284, 6 S.E.2d 466. Since the construction and maintenance of a sidetrack would not be considered the construction and maintenance of a dangerous instrumentality, the Railroad Company would owe only the duty of ordinary care. This duty, we are satisfied, appears to have been met.
 
 
 33
 In constructing its siding in October 1952, years after the power line had been erected, the Railroad Company complied with the rules and regulations of the Public Service Commission. While these rules and regulations were intended as prescribing minimum requirements for power companies, we are of opinion that they also served as an effective guide for railroads in constructing their tracks and sidings in the vicinity of existing power lines.
 
 
 34
 In explaining reasonable foreseeability, the court in Boyleston v. Southern Ry. Co., 1947, 211 S.C. 232, 44 S.E.2d 537, 539, 173 A.L.R. 788, said:
 
 
 35
 "Negligence carries with it liability for consequences which, in light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for injuries which, though possible, were wholly improbable. One is not charged with foreseeing that which could reasonably not be expected to happen. * * *"
 
 
 36
 See also Green v. Atlantic & C. Air Line Ry., 1925, 131 S.C. 124, 126 S.E. 441, 38 A.L.R. 1448. In the instant case, plaintiff urges that since the Railroad Company was negligent in constructing and maintaining its siding in close proximity to the electric power line, it is liable for all injuries resulting therefrom, regardless of the cause. To adopt the language of the court in Johnston v. Atlantic Coast Line R. R. Co., 1937, 183 S.C. 126, 190 S.E. 459, 461: "* * * such a conclusion, it seems to us, would be farfetched in the extreme, and would not only `practically stretch foresight into omniscience', * * * but would in effect require the anticipation of `whatsoever shall come to pass,' * * *." The duty of care required of one who invites persons on his premises for some lawful purpose is that he disclose known unsafe conditions which are unknown to the invitee. Baker v. Clark, supra; Bolen v. Strange, supra.
 
 
 37
 We cannot say that the existence of a power line some 27 or 28 feet from the siding was an unsafe condition known to the Railroad Company. The actual distance from the near rail of the siding to a point on the ground immediately under the power line was approximately four times the minimum distance required by the rules and regulations of the Public Service Commission. The available space would indicate to a person of ordinary prudence that a crane could be used without danger. The record discloses that several precautions which might have been taken were ignored. All of these considerations support the Railroad Company's position that it did not know, and was not bound to know, of any unsafe condition.
 
 
 38
 Assuming that it could be found that the existence of the power line some 27 or 28 feet from the sidetrack was an unsafe condition known to the Railroad Company, still there was no duty to warn Calvin and Robert Berry because they, too, were fully aware of the existence and location of the power line. Under the doctrine of the Baker and Bolen cases hereinbefore cited, this knowledge obviated the necessity of warning by the Railroad Company.
 
 
 39
 Plaintiff relies upon Southern Ry. Co. v. Jones, 6 Cir., 1955, 228 F.2d 203, and particularly upon an instruction on intervening cause approved by the court. Without quoting the instruction, it is sufficient to state that, in view of our conclusion that the Railroad Company was not negligent in the first instance in constructing its siding where it did, or in spotting its railroad car at the unloading point, under the circumstances it had no duty to warn Calvin and Robert Berry and no question of intervening negligence is presented. The only negligence was that of the employees of Wilhoit in failing to exercise the caution required of men of ordinary prudence.
 
 Summary Judgment
 
 40
 Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that summary judgment shall be rendered if the pleadings, depositions and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 6 Moore, Federal Practice, ¶ 16 56.17 [42] (2d Ed. 1953), in commenting upon this rule, states that as a general proposition issues of negligence are ordinarily not susceptible of summary adjudication, but when the moving party clearly establishes that there is no genuine issue of material fact, summary judgment may be rendered.
 
 
 41
 After the moving parties, the Power Company and the Railroad Company, made a convincing showing that no genuine issue of fact as to actionable negligence existed, the plaintiff had the burden of showing that the defendants committed one or more negligent acts or omissions in the maintenance of the power line and spur track and that such negligence was a proximate cause of the death of Robert Berry. This responsibility included the burden of showing that one or both of the defendants knew, or reasonably should have known, that a dangerous condition existed in respect to the unloading operation and that there was a failure to exercise due care. The allegations of plaintiff's unverified complaint will not suffice. Algar v. Yellow Cab Co., 1958, 103 U.S.App.D.C. 129, 255 F.2d 538. Nor can the plaintiff subsequently question the completeness of the summary judgment record by pointing to the absence of facts which her evidence before a jury might have shown, when she has here made no attempt to present such evidence. Morris v. Prefabrication Engineering Co., 5 Cir., 1950, 181 F.2d 23; Wm. J. Kelley Co. v. RFC, 1 Cir., 1949, 172 F.2d 865. On the contrary, the plaintiff's case must be judged solely on the record she has made before the trial judge in resisting the motion for summary judgment.
 
 
 42
 In Bruce Const. Corp. v. United States, 5 Cir., 1957, 242 F.2d 873, 875, speaking of the purpose and the application of Rule 56 in summary judgment proceedings, the court said:
 
 
 43
 "Consequently, when a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and, of course, he does not do that by mere denial or holding back evidence."
 
 
 44
 In Zoby v. American Fidelity Co., 4 Cir., 1957, 242 F.2d 76, 80, this court said:
 
 
 45
 "It is well settled, however, that to resist a motion for summary judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute, where the moving party's evidence has shown otherwise; * * * His bare contention that the issue is disputable will not suffice."
 
 
 46
 While this court has been reluctant to grant summary judgment in negligence cases, it has not precluded that possibility. In Pierce v. Ford Motor Co., 4 Cir., 1951, 190 F.2d 910, 915, Chief Judge Parker wrote:
 
 
 47
 "It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. * * *"
 
 
 48
 At page 916 of the opinion, Judge Parker quoted from Sartor v. Arkansas Nat. Gas Co., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967, as follows:
 
 
 49
 "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."
 
 
 50
 See also Kirkpatrick v. Consolidated Underwriters, 4 Cir., 1955, 227 F.2d 228.
 
 
 51
 The plaintiff has failed to carry her burden of showing that there is present here a genuine issue of material fact. There is no evidence of the existence of any fact which, when construed in the light most favorable to the plaintiff, will support the requisite inference that either defendant was negligent in respect to the death of Robert Berry. Here the parties do not disagree as to the material facts of the case, their disagreement resting solely upon the application of the law to the facts. We are of the opinion that the action of the District Court in ordering summary judgment was proper and must be affirmed.
 
 
 52
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 It is stated in Probart v. Idaho Power Co., 1953, 74 Idaho 119, 258 P.2d 361, 364, that: "Where a safety code is adopted by the state and constitutes a guide for electric companies, the construction and maintenance of a line in accordance with such code constitutes prima facie evidence of the absence of negligence." See Isbell v. Union Light, Heat & Power Co., D.C.E.D.Ky.1958, 162 F.Supp. 471, 474; Rudd v. Public Serv. Co., D.C.N.D.Okla.1954, 126 F. Supp. 722, 724; Merlo v. Public Serv. Co., 1942, 381 Ill. 300, 45 N.E.2d 665; Southwestern Gas & Elec. Co. v. Deshazo, 1940, 199 Ark. 1078, 138 S.W.2d 397. The South Carolina Public Service Commission rules and regulations were patterned after the National Electrical Safety Code (5th Ed. 1941) published by the Bureau of Standards, U. S. Department of Commerce. An indication of the weight attached to this code, even in states where it has not received legislative sanction, is apparent from the following statement in Smith v. Iowa Public Serv. Co., 1942, 233 Iowa 336, 6 N.W. 2d 123: "While this code has, insofar as this case is concerned, no legislative sanction, it is difficult to conceive a better test of care than compliance with its provisions."