Garrett C. **CHITWOOD** et al., Plaintiffs,

v.

Eston K. **FEASTER**, individually and as President of Fairmont State College, et al., Defendants.

Civ. A. No. 71–8–F.

United States District Court, N. D. West Virginia.

Jan. 20, 1972.

James A. Esposito, Fairmont, W. Va., Franklin D. Cleckley, Morgantown, W. Va., for plaintiffs.

Chauncey H. Browning, Jr., Atty. Gen. of W. Va., Victor A. Barone, Joseph E. Hodgson, Asst. Attys. Gen., Charleston, W. Va., Woodrow A. Potesto, Fairmont, W. Va., for defendants.

MAXWELL, Chief Judge.

Plaintiffs, all teachers by profession, are seven nontenured members of the Fairmont State College faculty, whose teaching contracts were not renewed for the academic year 1971–1972. They allege that they were teachers at the college for periods ranging from two to four years, and that the defendants denied each of the plaintiffs a renewal of his teaching contract without any proper reason or justification, and that the action of nonrenewal was arbitrary, capricious, unreasonable and discriminatory. They also allege that each of plaintiffs was denied the right of a hearing on the decision of nonrenewal.

The defendants are Eston K. Feaster, President of Fairmont State College, who is also sued in his individual capacity, Prince B. Woodard who likewise is sued individually as well as Chancellor of the West Virginia Board of Regents and the West Virginia Board of Regents, a statutory corporation.

Jurisdiction of this Court is invoked by virtue of Title 28 U.S.C.A., Section 1343(3), and, as plaintiffs assert the suit is authorized

" . . . to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States or by any Act of Congress providing for equal rights of citizens. The rights here sought to be redressed are rights guaranteed by the First, Fifth and Fourteenth Amendments to the Constitution of the United States."

Plaintiffs allege in the body of their complaint that the proceedings are for injunctive relief, as well as for damages.

In the prayer of the complaint the plaintiffs seek $50,000 each as damages, plus costs and attorney fees, an order granting plaintiffs a teaching contract for the current 1971–1972 academic college year, and other relief as the Court deems just.

The plaintiffs urge that under color of the authority conferred upon defendants by the laws of the State of West Virginia

" . . . the defendants, all, individually, and in concert with each other, prior to and subsequent to March 4, 1971, did deny the plaintiffs a renewal of their teaching contract for the 1971–1972 academic year without any reason, justification of any sort, or substantial basic [sic] in fact or rational basis in law for such action; that there is in fact no lawful reason for the non-renewal of plaintiffs' teaching contract; that said non-renewal was arbitrary, capricious, unreasonable and discriminatory and was without authority of law, and is a denial of plaintiffs' rights without due process of law contrary to the First, Fifth and Fourteenth Amendments to the Constitution of the United States."

The plaintiffs further insist that the action and decision of the defendants was void of any process or procedures

which would tend to secure a fair and rational determination and that the plaintiffs were given no opportunity to participate meaningfully in the decision making process of the defendants or to present witnesses or evidence in their own behalf or to cross-examine witnesses prior to the defendants' action not to renew their teaching contract.

Plaintiffs bare the genesis of their litigation in paragraph IX of their complaint which is as follows:

Upon information and belief, the suspected reasons for defendants' actions are due to plaintiffs' sex, their known sympathetics [sic] for minority students, their encouragement of non-athletic minority students enrollment, their verbal support of the anti-war protest movement, and their just but harsh criticism of the College's administration, all of such activities are permissible within the scope of the First and Fourteenth Amendments.

. Plaintiffs chronologically allege that subsequent to the nonrenewal decision of the defendants, they requested an opportunity to present proof that defendants acted without justification or basis of fact, and to establish that plaintiffs are in fact fit and proper persons to continue their teaching responsibilities, and to show that the decision not to renew their teaching contracts was all based on unconstitutional grounds. Such request by plaintiffs to present proof apparently has not been further pursued before any of the defendants. Before this Court, although given the opportunity to disclose, as hereafter detailed, plaintiffs have not presented any facts such as are suggested in their complaint.

A timely motion to dismiss, or in the alternative for a summary judgment, was filed by the defendants.

Three basic contentions are raised by the defendants' motion, namely, that this is an unconsented suit against the State of West Virginia; that the complaint fails to state a claim, that there is no cause of action for which relief can be granted as to plaintiff Ernest E. Chapman who has in fact had his teaching contract renewed for the academic year 1971–1972.

As to the cause of action of plaintiff Ernest E. Chapman, the affidavit of Eston K. Feaster which is filed in support of the defendants' motions states that

By a letter of December 11, 1970, I notified him (Chapman) that, in accordance with the policy concerning nonreappointment of faculty as stated in the Faculty Handbook, his appointment at Fairmont State College would not be continued after the 1971–1972 academic year. Since he had less than three years of college experience when employed at Fairmont State College, he was serving for a probationary period of five years and was thereby entitled to a notice of not less than twelve months that his appointment would not be renewed. *His appointment for the academic year 1971–1972 has been renewed.* (Emphasis supplied).

The affidavit of Ernest E Chapman has been filed in this civil action in support of plaintiffs' motion for summary judgment and in part is as follows:

On December 11, 1970, I was notified by President Feaster in a certified letter that my employment with Fairmont State College would terminate at the end of the 1971–1972 academic year.

Since I have a contract for the coming academic year as a member of the faculty at Fairmont State, I have not looked for a new teaching position. However, it is my belief based on the experience of other faculty members in a similar situation as a result of the dismissal procedures employed by President Eston K. Feaster that I will have very great difficulty in finding a suitable assignment. My colleagues and I have found that letters of recommendation are imperative at a time when college professors are in great

supply. Furthermore my reputation as a citizen has been considerably impaired. I have been informed that some citizens in the area believe me to be a communist and a trouble maker. . . .

■ In view of the factual circumstances that surround the issues in this case, as applied to plaintiff Chapman, it is apparent that he does not have an immediate cause of action and should be dismissed as a party. Accordingly, this civil action will now proceed only as to those plaintiffs whose teaching contracts have not been renewed.

The second contention of the alternative motion of defendants, as now applied to the six remaining plaintiffs, is (1) that these plaintiffs do not have tenure as teachers; (2) that there is no rule, regulation or policy which provides for or requires that the plaintiffs be given a statement of reasons for nonreappointment or for a hearing; (3) that the respective contracts of employment do not provide or require that the plaintiffs be given a statement of reasons for non-reappointment or for a hearing; and (4) that the complaint does not allege facts sufficient to invoke the alleged violations of plaintiffs' First Amendment freedoms.

As a part of the Feaster affidavit, it is stated that on August 26–27, 1968, the West Virginia Board of Education adopted for all institutions coming under its jurisdiction, including Fairmont State College, POLICIES REGARDING FACULTY PROBATION, TENURE, DISMISSAL AND RANK INSTITUTION OF HIGHER EDUCATION UNDER BOARD JURISDICTION.[1]

1. POLICIES REGARDING FACULTY PROBATION, TENURE, DISMISSAL, AND RANK INSTITUTION OF HIGHER EDUCATION UNDER BOARD JURISDICTION

*Probation and Tenure*

When a person is first employed to teach in any of the institutions of higher education under the jurisdiction of the West Virginia Board of Education, his employment shall be on probationary status, except that persons employed as visiting professors shall not be considered as being either on probation or on tenure. All contracts shall be for one academic year or a part thereof.

Tenure shall not be granted automatically but shall result from action by the West Virginia Board of Education upon the recommendation of the president. Tenure status may be attained by all teaching personnel with the rank of assistant professor, associate professor, or professor.

A person who has not had at least three years of college or university teaching experience and who is employed to teach in any college or university under the jurisdiction of the West Virginia Board of Education shall be on probationary status for at least five years. At the end of this period the president shall recommend to the governing board either that the probationary faculty member be placed on tenure or that his employment be discontinued at the end of the contractual period. In the latter event, notice shall be given at least one year prior to the expiration of the probationary period.

A person who has taught on the college or university level three or more years before being employed for teaching service in a college or university under the control of the West Virginia Board of Education shall normally be employed on probationary status for three years before becoming eligible for tenure. At the end of this period the president shall recommend to the governing board either that the probationary faculty member be placed on tenure or that his employment be discontinued at the end of the contractual period. In the latter event, notice shall be given at least one year prior to the expiration of the probationary period.

Under special conditions, the president may recommend an associate professor or professor for tenure upon initial appointment or at the end of any academic year thereafter.

For purposes of computing the length of probation, summer terms shall not be counted as part of an academic year, nor shall leaves of absence for any purpose, nor shall part-time teaching be included as part of the minimum number of years' teaching service required.

*Dismissal*

Termination of the continuous appointment (tenured faculty) or the dismissal of a faculty member prior to the expiration

The defendant West Virginia Board of Regents is the successor corporation to the West Virginia Board of Education, insofar as the designated policies

of a term appointment, shall be for adequate cause, including incompetency, immorality, insubordination, physical or mental disability, proven disloyalty to the country, or because of a bona fide financial exigency. Notice of termination or dismissal shall be made in writing, and shall include a statement of the charges and the right to and the procedure for a hearing and an appeal. Such termination or dismissal shall, if requested by the faculty member, be reviewed by a faculty committee and, if he so desires, he shall have an appeal beyond the committee to the governing board of the institution. In the event of a hearing, the faculty member shall be permitted to have with him an adviser of his own choosing from within the institution and any witnesses he may wish to present. A record of the proceedings shall be kept and shall be made available to any of the parties concerned at his own expense. In the hearing of charges of incompetence the testimony may include that of teachers and other scholars, either from the faculty member's own institution or from other institutions.

*Notice of Nonreappointment*

Notice of nonreappointment, or of intention not to recommend reappointment to the West Virginia Board of Education, will be given in writing in accordance with the following standards:

(1) Not later than March 1 of the first academic year of service, if the appointment expires at the end of that year; or, if a one-year appointment terminates during an academic year, at lease three months in advance of its termination.

(2) Not later than December 15 of the second academic year of service, if the appointment expires at the end of that year; or, if the second appointment terminates during the academic year, at least three months in advance of its termination.

(3) At least twelve months before the expiration of an appointment after two or more years in the institution.

*Notice of Resignation*

If a member of the faculty desires to terminate an existing appointment at the end of the academic year, or to decline a renewal in the absence of notice of nonremoval, he shall give notice in writing at the earliest opportunity but not later than May 15; but he may properly request a waiver of this requirement in case of hardship or in a situation where he would otherwise be denied substantial professional advancement.

*Rank*

*Professor.* To be eligible for the rank of professor a staff member must hold an earned doctorate or the highest academic degree in his field or must have achieved professional eminence and must have had ten years of satisfactory teaching or professional experience. Persons with an earned doctorate are eligible for the rank of professor after eight years of full-time employment. The teaching or professional experience should give evidence of continuous professional growth. In addition, a staff member must have achieved a satisfactory record in the following areas: teaching, scholarship, character, institutional and community service.

*Associate Professor.* For the rank of associate professor a staff member must ordinarily have earned the master's degree plus 30 hours of graduate study in his field or have earned 60 hours of graduate work toward the doctorate. He should normally have six years of teaching or professional experience of above-average quality, but persons who have an earned doctorate are eligible for promotion to the rank of associate professor after four years of full-time employment. In addition, a staff member must have achieved a satisfactory record in the following areas: teaching, scholarship, character, institutional and community service.

*Assistant Professor.* For the rank of assistant professor a staff member must ordinarily have earned the master's degree plus 15 hours of graduate study in his field and have had at least three years of satisfactory teaching or professional experience. The experience requirement may be waived at the discretion of the employing institution for holders of earned doctor's degrees. Persons with bachelor's degrees who are teaching in two-year terminal programs only may be promoted to the rank of assistant professor after five years of successful college teaching experience. For employment as an assistant professor a staff member must have achieved a satisfactory record in the following areas: teaching, scholarship, character, institutional and community service.

*Instructor.* A master's degree is required for the rank of instructor except in certain technological or other specialized fields.

and affairs of the state colleges and universities are concerned. West Virginia Code 18–26–12 (Michie 1966).

It is also maintained by the defense in support of the dual motion before the Court that these policies of faculty probation, tenure, etc., are contained verbatim in the Faculty Handbook, published at Fairmont State College and available to all members of the faculty, including the plaintiffs, at the beginning of their teaching period.

The defendants also advance through the affidavit of defendant Feaster that

*The decisions of nonreappointment of said plaintiffs were made by me in each case in the exercise of discretion after a conference with the appropriate division chairman, the academic dean, and the administrative dean and said decisions were agreed to by all of those parties.* Notice of nonreappointment was given each plaintiff in accordance with the date specified in said policy governing nonreappointment of faculty members, as hereinbefore set forth. *None of said plaintiffs have been recommended for tenure,* the granting of which is by the West Virginia Board of Regents. *None of the contracts of appointment provide for the giving of any reasons for nonreappointment or for a hearing on the decision of nonreappointment. Said policy for nonreappointment of teachers on a probationary status does not provide for any statement of reasons for nonreappointment or for any hearing on such a decision.* All of said decisions of nonreappointment of plaintiffs were made in accordance with said policy, and notice in each case was given as required by the terms of said policy. (Emphasis supplied).

It is also asserted by defendants through the affidavit of defendant Feaster that

. . . *subsequent to my notification of nonreappointment* of plaintiffs but prior to their requests for appeals to the West Virginia Board of Regents, *several of the plaintiffs, namely, Clarence Wolfshohl, Ada N. Parkinson, and Dorothy Schwer, presented said decisions as to each of them in the form of grievances before the Faculty Personnel Committee at Fairmont State College and were provided a hearing thereon.* I am informed that *this Committee determined that I followed said policy relating to faculty probation, etc., in the nonreappointment of said three plaintiffs. This Committee is a standing committee, composed of five faculty members at Fairmont State College with the rank of full professor, whose jurisdiction is to hear grievances and complaints of faculty members regarding faculty promotion, probation and tenure.* (Emphasis supplied).

Additionally, the affidavit of defendant Feaster professes:

I know of *no statute of the State of West Virginia or of any rule, regulation or policy relating to probation and tenure,* including that hereinbefore set forth, *that provides for or requires the President of Fairmont State College to furnish a statement of reasons to one in the probationary status who is not reappointed, or to afford a hearing if he or she feels aggrieved thereby.* (Emphasis supplied).

The affidavit of defendant Woodard in support of the dual motions of defendants supplements the affidavit of defendant Feaster by reporting on the factual involvement of affiant as Chancellor of the West Virginia Board of Regents and the corporate entity of the statutory corporation, which in part is as follows:

I had no official knowledge of the notification of the nonreappointment of the plaintiffs, Garrett C. Chitwood, Clarence Wolfshohl, Ernest E. Chapman, Ada N. Parkinson, Daniel McConnell, Edna Baker and Dorothy Schwer, until after each was so notified by Dr. Eston K. Feaster, President of Fairmont State College.

Thereafter, I received letters from each of plaintiffs to the West Virginia Board of Regents requesting a hearing on said respective decisions of non-reappointment.

By letters of February 11, 1971, the plaintiffs Chitwood, Wolfshohl, McConnell, and Baker, respectively, requested said Board of Regents to provide a hearing for each within a reasonable amount of time, that before said hearing each be informed of the "charges" against him or her and that during said hearing each have the opportunity to present evidence and confront his or her "accusers," that he or she be granted the right to legal counsel for the hearing and provide him or her with a transcript of the proceedings at the hearing. By letter of February 13, 1971, the plaintiff Chapman made the same request and by letters of February 23, 1971, the plaintiffs Parkinson and Schwer, respectively, made the same request. Each of these letters was received by the Board of Regents.

After receipt of said letters, I directed President Feaster to furnish to the Board of Regents data respecting these plaintiffs as to the date each was originally employed at Fairmont State College, the capacities in which employed and the dates when each of said plaintiffs was notified of his or her nonreappointment. This data was promptly furnished me, and I made the same available to the Board of Regents together with the "Policies Regarding Faculty Probation, Tenure, Dismissal, and Rank, Institutions of Higher Education Under Board Jurisdiction" that had been previously adopted by the West Virginia Board of Education, predecessor to the West Virginia Board of Regents, as to institutions of higher learning in West Virginia. I informed the Board that said rules did not provide for a statement of reasons or for a hearing for teachers in a probationary status whose appointments are not to be renewed.

At its meeting on March 2, 1971, said Board of Regents considered the respective requests of plaintiffs for a hearing together with said information that I had provided the Board, and the Board in each case resolved that it found no basis to support the request for a hearing, that the appeal be denied and the action of the President of Fairmont State College be upheld and approved. I then so notified each plaintiff of the action of said Board.

With the proceedings structured as indicated, the Court, by memorandum order of July 9, 1971, scheduled a hearing before the Court on July 19, 1971, for the determination of the pending issues raised by defendants' motions. The memorandum order invited the pre-hearing development of any factual matters not apparent from the record.[2]

2. It appearing to the Court that the present state of the pleadings in the above styled civil action, including defendant's motion to dismiss, or in the alternative for a summary judgment, may raise factual considerations that do not now appear from the pleadings, other than the affidavits submitted in support of defendant's pending motion, and that before the issues of law presently before the Court are submitted for determination it is necessary to inquire as to whether further facts not appearing of record herein should be presented.

Upon consideration of the record presently pending in this case, and the issues to be considered in the defense motions now before the Court, it is

Ordered that not later than the 15th day of July, 1971, any party to this litigation who urges the consideration of facts not presently appearing of record shall prepare and file with the Court at Elkins, West Virginia, a statement setting forth precisely the matters of fact that he believes are necessary to the proper disposition of the issues presented by the pending motions; that in conjunction

On July 15, 1971, there was filed in the Clerk's office of this Court a motion by plaintiffs for summary judgment. Accompanying plaintiffs' motion were the affidavits of plaintiffs Dorothy M. Schwer, Ada N. Parkinson, Clarence J. Wolfshohl, the unexecuted affidavit of plaintiff Daniel J. McConnell, and the affidavit of Ernest E. Chapman. Affidavits of plaintiffs Chitwood and Baker were not presented to the Court in support of this motion for summary judgment, although the motion presented indicated that the same was filed on behalf of all plaintiffs.

Plaintiffs' motion for summary judgment advises that "there are no disputed facts in this action between the parties"; "the only issues to be resolved are legal in nature", "there is no necessity for an evidentiary hearing since the facts are uncontroverted"; and "a prompt and final disposition of this case is in the interest of all parties". The motion concludes that "for the reasons stated in the complaint, affidavits and memorandum of law it is requested that a summary judgment be entered in favor of the plaintiffs."

At this juncture of the proceedings the Court had before it affidavits of defendants Feaster and Woodard and plaintiffs Schwer, Parkinson, Wolfshohl, McConnell (unexecuted), and Chapman. In other words, all individuals except plaintiffs Chitwood and Baker were at this time before the Court in affidavit form.

Thereafter, on August 13, 1971, by memorandum order, the Court noting the pendency of defendants' motion to dismiss or in the alternative for summary judgment and plaintiffs' subsequent motion for summary judgment, again invited the parties in litigation to consider and advance possible factual matters not apparent from the pleadings, and further attempted to schedule the development of any undisclosed facts.

On August 16, 1971, plaintiffs filed in the Clerk's office of this Court a motion and notice thereof whereby the plaintiffs moved the Court, on that date, or as soon thereafter as counsel could be heard, for a preliminary injunction restraining the defendants from continuing to refuse to give plaintiffs their contracts to teach for the academic year 1971–1972. This motion for a temporary restraining order was accompanied by the affidavit of plaintiffs Edna Baker and Garrett C. Chitwood, Jr.

The Court then, for the first time since the inception of the civil action, had before it the affidavits of all individuals. Perhaps it should be noted that the Court considers the affidavit of Ernest E. Chapman for such value and such weight as the same may have insofar as the remaining plaintiffs are concerned, and considers the non-executed affidavit of plaintiff Daniel McConnell as having no force and effect. Although the fact of the non-execution of the affidavit has been made known, no effort or attempt has been made by the plaintiff McConnell, insofar as this Court is advised, to execute the affidavit or to replace the non-executed affidavit.

The final hearing on the pending motions was held as scheduled on September

---

with said statement there shall be filed with the Court all documentary evidence and other materials which are to be considered, either in support of or opposition to the issues presented by the pending motions; and that accompanying said statement and documentary or other evidence there shall be submitted, with particularity, the names and addresses of all persons whose testimony is believed necessary to the proper disposition of issues presented by said motions, and with the name and address of each witness there shall be pre-

sented a short statement of the testimony to be offered through such witness, either in support of or opposition to issues pending and which are factual developments thereof not presently of record.

It is further Ordered that the determination of the pending issues raised by defendants' motions, both of fact and law, is scheduled for final hearing before this Court on July 19, 1971, at 1:30 o'clock Daylight Saving Time at the Federal Courtroom in Fairmont, West Virginia.

3, 1971, at which time no further factual matters were offered by either plaintiffs or defendants. At the conclusion of the hearing the matters in issue were submitted to the Court for consideration on the motions earlier filed.

At the outset it must be recognized that the plaintiffs do not contend and, in fact, the record expressly reveals that the plaintiffs do not rely upon contractual rights or statutory rights in their effort to reverse the nonreappointment of plaintiffs to their teaching positions.

While several fundamental issues are manifest at this stage of the litigation [3] the core inquiry poised addresses itself essentially to the allegations of paragraph IX of the complaint and the general proposition that plaintiffs believe that the decision of nonreappointment is the defendants' response to the plaintiffs' legitimate exercise of their First Amendment freedoms; namely, their extracurricular speeches criticizing the Vietnam war and their criticism of the college administration; their known association with and sympathy for minority students and their style of living.

The plaintiffs argue that Title 42 U.S.C.A. Section 1983, the Civil Rights Act of 1871, makes available to these plaintiffs three constitutional guarantees. They are: (1) that a nontenured teacher's right of substantive and procedural due process under the Fourteenth Amendment of the United States Constitution is violated when a public educational institution refuses to renew the teacher's contract without providing any reasons or justifications; (2) that a nontenured teacher's right of procedural due process under the Fourteenth Amendment is violated when a public educational institution fails to provide the teacher with adequate prior notice and an opportunity for a hearing in refusing to renew that teacher's contract; and (3) that a nontenured teacher's allegation, such as that contained in paragraph IX of the complaint in this case, that he "suspects" that his contract was not renewed because he exercised First and Fourteenth Amendment rights is sufficient to state a claim under the Civil Rights Act. The resolution of this latter basic question assumes priority over the other issues.

A review of the policy rules regarding faculty probation, tenure, dismissal, etc., demonstrates a definite and definable distinction between persons in the higher educational facilities of West Virginia who are tenured teachers and those who are nontenured. That which these nontenured teachers, plaintiffs herein, seek is without doubt available, and procedurally required, in the event of the termination of employment of a faculty member of such institution who has obtained tenure.

In urging that they have an interest that is protectible under the due process clause of the Fourteenth Amendment, the plaintiffs rely upon Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969), a case which involved the claim that the nonrenewal of the plaintiff teacher's contract was in retaliation for the exercise of First Amendment rights. *Pred* is cited here for the proposition that "the right sought to be vindicated" is neither based on a con-

---

3. (1) Whether the principles of sovereign immunity apply to litigation of this nature; (2) whether the defendants Feaster and Woodard as individuals should be dismissed from the action because all of their activity was in an official capacity and not as individuals, and further, because in all of their activities they obviously, without contradiction, have pursued official policy with good faith; (3) whether, in event the plaintiffs have stated a sufficient factual cause of action, the resolution of the procedural safeguards should be remanded to a campus administrative hearing with prescribed procedural safeguards or whether such future inquiries should be by the Court without a jury, or, should the inquiry as to the reasons underpinning the nonrenewal of the teaching contracts be resolved by a jury trial.

tractual relationship nor on tenure status; rather, "what is at stake is the vindication of constitutional rights." Accord, McLaughlin v. Tilendis, 398 F. 2d 287 (7th Cir. 1968); see Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947), cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L. Ed. 400 (1947), for the proposition that "the wrong is independent of any breach of contract . . .." Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), and Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), are also relied upon by plaintiffs for the principle that regardless of the nature of the constitutional rights involved, whether it be a First Amendment right or a due process right, there is a constitutional right to be free from arbitrary governmental action.

Plaintiffs cite Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), cert. denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967), as being a recognition by the Fourth Circuit that a person in the position of the plaintiffs in this case has the protectible interest not to be discharged from public employment for reasons which are capricious or arbitrary, and such person has the protectible interest not to be discharged in order that the public authority can retaliate against him for exercising his constitutional rights or for other reasons equally violative of substantive constitutional rights.

The position maintained by plaintiffs nevertheless is cognizant of the conflict among circuits with regard to whether a nontenured teacher has a protectible interest under the Fourteenth Amendment.

Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970), recognizes "no interest" protected by the Constitution where the teacher has no statutory tenure and the contract expires. Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir. 1969),

cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969), apparently rejects the doctrine of Johnson v. Branch, supra, insofar as the same applies to the claim of an arbitrary nonrenewal but would support a contention, if advanced upon the theory of an interference with First Amendment freedoms.

In addition to the position maintained by Jones v. Hopper and Freeman v. Gould Special School District, supra, the holding of Parker v. Board of Education, 237 F.Supp. 222 (D.Md.1965), affirmed, 348 F.2d 464 (4th Cir. 1965), cert. denied, 382 U.S. 1030, 86 S.Ct. 653, 15 L. Ed.2d 543 (1966), strongly relied on by the defendants, is noteworthy.

In Parker v. Board of Education the Court said: "Our decision rests entirely on the contract. By its terms Parker was only employed provisionally and wholly without academic tenure, expressed or implied." 348 F.2d at 465.

Plaintiffs would insist, however, that Parker has lost its significance, in light of the facts alleged and presented to the Court in this case and in view of the statement in Johnson v. Branch, 364 F.2d at 181:

The statute gives discretion to the school board in deciding whether or not to continue the employment of a teacher. Discretion means the exercise of judgment, not bias or capriciousness. Thus it must be based upon fact supported by reasoned analysis.

It is acknowledged by plaintiffs that the primary interest of the Board of Regents and the officials of Fairmont State College is to insure quality of instruction by employing each teacher initially on a probationary program. This allows the officials the opportunity to personally evaluate and render an individual judgment as to each teacher's capacity, capability and inclination toward participating in the collective educational effort. Of necessity, selective standards as well as objective measures must be considered. The plaintiffs say that the burdens of disclosure by

school officials are relatively light when weighed against a teacher's livelihood and his constitutional right to be assured that a decision not to renew his contract is not based upon unsupported facts or upon matters that are without reason.

In addition, the plaintiffs also suggest that there is the expectancy interest of nontenured teachers to have a decision to rehire them or not to rehire them based on facts. Roth v. Board of Regents of State Colleges, 310 F.Supp. 972 (W.D. Wis.1970).

Defendants' claim, succinctly stated, is that plaintiffs have no constitutional right to renewal of their contracts and since there is no tenure on behalf of any of the plaintiffs and no statutory guarantees to the nontenured teachers, the litigation before this Court fails to state a cause of action. Parker v. Board of Education, *supra*; Shirck v. Thomas, 315 F.Supp. 1124 (S.D.Ill.1970); Schultz v. Palmberg, 317 F.Supp. 659 (D.Wyo. 1970).

From the policies regarding faculty probation, tenure, dismissal, etc., it would appear that the following excerpts from the earlier mentioned policy regulations are pertinent and important to the issue now before this Court:

> When a person is first employed to teach in any of the institutions of higher education under the jurisdiction of the West Virginia Board of Education, his employment shall be on probationary status. . . . All contracts shall be for one academic year or a part thereof.

> Tenure shall not be granted automatically but shall result from action by the West Virginia Board of Education upon the recommendation of the president . . . .

> \* \* \* \* \* \*

> Notice of nonreappointment, or of intention not to recommend reappointment to the West Virginia Board of Education, will be given in writing in accordance with the following standards:

> (1) Not later than March 1 of the first academic year of service, if the appointment expires at the end of that year. . . .

> (2) Not later than December 15 of the second academic year of service, if the appointment expires at the end of that year. . . .

> (3) At least twelve months before the expiration of an appointment after two or more years in the institution.

It is under these conditions, these circumstances, these provisions, and with these clearly defined positions of the parties that these plaintiffs commenced their teaching careers at Fairmont State College. This Court is satisfied that its decision in this case must rest greatly on the employment contract, plus the official policies of the school authorities with regard to employment, as stated. By the terms of their contracts of employment and the policy considerations that apply, these plaintiffs were employed provisionally and wholly without academic tenure express or implied. Parker v. Board of Education, *supra.*

As stated earlier both parties seek relief by way of summary judgment. The record before the Court at this time and the expressions of counsel on brief and in oral argument all support the conclusion that the matters to be decided at this time are factually complete.

Rule 56(c), Federal Rules of Civil Procedure, provides that "the (summary) judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The existing language of Rule 56, Federal Rules of Civil Procedure, is clear that if a party in litigation can produce evidence of any kind in support of his claim, or is able to refute the claim of his adversary, it must be done in a motion for summary judgment, or he assumes the risk of having judgment entered against him.

In Bland v. Norfolk and Southern Railroad Company, 406 F.2d 863 (4th Cir. 1969), the Court, in affirming a decision from the Eastern District of North Carolina granting defendant's motion for summary judgment in a tort case, noted that under Rule 56, Federal Rules of Civil Procedure: "Summary judgment is to avoid a useless trial. It is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts. 6 Moore's Federal Practice ¶ 56.15(1); 3 Barron and Holtzoff, Federal Practice and Procedure (Wright's Ed. 1958), § 1231." *Id.* at 866.

In *Bland*, defendant's motion for summary judgment assumed, for purposes of the motion, defendant's negligence but asserted contributory negligence on the part of plaintiff. The District Court found that, as a matter of North Carolina law, plaintiff was guilty of contributory negligence and granted the motion for summary judgment. It was this action of the District Court that was affirmed by the Circuit Court of Appeals for the Fourth Circuit.

In discussing the employment of procedures authorized under Rule 56, the Court commented:

Summary judgment will lie only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), supra. In regard to the pleadings, however, 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.' Rule 56(e) supra. . . . [T]he function of a motion for summary judgment is to smoke out if there is any case, i. e., any genuine dispute

as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

In *Bland*, decided February 3, 1969, the court expressed the importance of full and complete compliance with Rule 56(e), and decisionally fortified, in the Fourth Circuit, the July 1, 1963, amendment of Rule 56(e) which added the following sentences:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In Berry v. Atlantic Coastline Railroad Company, 273 F.2d 572 (4th Cir. 1960), the Fourth Circuit, considerably before the above quoted 1963 amendment, noted that if there is no genuine issue of any material fact, the moving party is entitled to summary judgment as a matter of law. The court said:

The allegations of plaintiff's unverified complaint will not suffice. Nor can the plaintiff subsequently question the completeness of the summary judgment record by pointing to the absence of facts . . . . [T]he plaintiff's case must be judged solely on the record she has made before the trial judge in resisting the motion for summary judgment. *Id.* at 582. (Citations omitted).

The party resisting a motion for summary judgment must present some evidence to indicate that the facts are in dispute, and the mere contention that the issue is disputable will not suffice. Zoby v. American Fidelity Company, 242 F.2d 76 (4th Cir. 1957). See also Higgins v. Moore, 264 F.Supp. 635 (D.C. S.C.1967) (a seduction case); Brown v.

Ford Motor Company, 287 F.Supp. 906 (D.C.S.C.1968) (a tort case involving the alleged mechanical defect in an automobile); Horne v. Seaboard Coast Line Railroad Company, 301 F.Supp. 561 (D.C.S.C.1969) (a wrongful death case involving the last clear chance doctrine); Powell v. United States Steel Corporation, 305 F.Supp. 645 (S.D.W.Va.1969) (a negligence action involving the issue of contributory negligence); and Miller v. Perry, 308 F.Supp. 863 (D.C.S.C.1970) (wrongful death case involving a child and the attractive nuisance doctrine).

From the entire record in this civil action, it is apparent that the pleadings and the affidavits do not show facts which demonstrate or support the inference of a constitutionally impermissible basis for the nonrenewal of plaintiffs' contracts, nor are we advised of the names of persons who can testify on behalf of plaintiffs as to such impermissible conduct, if any exists. The same observation is applicable to the other allegations of improper action alleged against the defendants.

Perhaps of significance is the absence of discovery proceedings, especially by plaintiffs in view of their allegations. The availability of such discovery methods as depositions upon oral examination or by written questions, written interrogatories, request for production of documents, request for admission of factual or documentary certainties and the multiple variation of all these basic tools of factual inquiry (Rules 26–37 F.R.C.P.) are all missing in this present litigation.

Backgrounded by information set forth in affidavits filed in support of the defense motions to dismiss, and subsequently plaintiffs' motions, it perhaps is a valid conclusion to presume that the absence of discovery procedures was an informed determination of counsel. Such determination could be realistically motivated by the conclusion that all facts in litigation are disclosed through the avenue of affidavits filed in support of the pending motions, and that further discovery of factual details of plaintiffs'

nonrenewal of their teaching contracts would be fruitless. An additional motivation may well have been the recognition of the validity of the action taken by defendants and reported in detail in the affidavit of the defendant Feaster. And a still further conclusion of motivation could have been that upon reflection of developed pleadings plaintiffs recognized that the nonrenewal of their teaching contracts was not based on impermissible conduct by defendants and in the final analysis plaintiffs are unable to prove their "suspected" contentions.

Paragraph 9 of the complaint alleges, "upon information and belief, the suspected reasons for defendants' actions are . . ." the exercise by the plaintiffs of constitutionally protected rights. *Bland* at this juncture of the case requires plaintiffs to set forth at this time the facts showing a genuine issue of fact. While the Court does not try the case by affidavit, the purpose of affidavits in support of and in opposition to summary judgment is to determine if there is a triable issue of fact. Moore, § 56.22(1) states: "Affidavits containing statements made merely 'on information and belief' will be disregarded." See F. S. Bowen Electric Company v. J. D. Hedin Construction Company, 114 U.S.App.D.C. 361, 316 F.2d 362 (1963).

In the present state of the record, the plaintiffs in this civil action have not satisfied the requirements of *Bland* by showing that there is a genuine issue as to a material fact by setting forth specific facts provable by competent witnesses as required by Rule 56(e).

The Court has invited the parties on two separate occasions (the Court's memorandum order of July 9, 1971, and the Court's memorandum order of August 13, 1971) to present any matters of fact that are believed necessary to the proper disposition of the issues raised and presented by the motions now under consideration by the Court. Indeed, counsel for all parties have been extremely diligent in developing the litigation be-

fore the Court and it is fair to assume that all factual considerations, of both plaintiffs and defendants, are now fully and completely before the Court.

Procedurely then it may be recognized that the provisions of Rule 56 are appropriate, in light of the record in this litigation, and summary judgment is proper and should be employed.

Important to the understanding of the fundamental questions in litigation here is Johnson v. Branch, *supra,* in which a Negro school teacher alleged racial discrimination in the nonrenewal of her teaching contract. She alleged that activity by her and her husband in civil rights and political areas was the basis of the nonrenewal of her teaching contract. The court stated:

> No one questions the fact that the plaintiff had neither a contract nor a constitutional right to have her contract renewed, but these questions are not involved in this case. It is the plaintiff's contention that her contract was not renewed for reasons which were either capricious and arbitrary or in order to retaliate against her for exercising her constitutional right to protest racial discrimination. 364 F. 2d at 179.

This language from *Johnson* is particularly important in view of the reliance placed by defendants in this case upon Parker v. Board of Education, *supra.* In Parker v. Board of Education the decision was based solely upon the terms and language of the contract. No deprivation of a constitutionally protected right was in issue, although one of the facts of the case dealt with the teacher's lack of permission to teach from a certain book.

Returning to Johnson v. Branch, the court noted:

> We take it to be beyond cavil that the state may not force the plaintiff to choose between exercising her legitimate constitutional rights and her right of equality of opportunity to hold public employment. 364 F.2d at 180.

In Alston v. School Board of City of Norfolk, 112 F.2d 992 (4th Cir. 1940), cert. denied, 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 448 (1940), a case involving the practice of paying Negro teachers smaller salaries than white teachers, Judge Parker, in writing for the Fourth Circuit said:

> It is no answer to this to say that the hiring of any teacher is a matter resting in the discretion of the school authorities. Plaintiffs, as teachers qualified and subject to employment by the state, are entitled to apply for the positions and to have the discretion of the authorities exercised lawfully and without unconstitutional discrimination as to the rate of pay to be awarded them, if their applications are accepted. * * * If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence. *Id.* at 996–997. (Citations omitted).

In citing Franklin v. County School Board of Giles County, 360 F.2d 325 (4th Cir. 1966), a case in which Negro teachers' contracts were not renewed because of their race, the *Johnson* court said:

> However wide the discretion of School Boards, it cannot be exercised so as to arbitrarily deprive persons of their constitutional rights. 364 F.2d at 180. (Other citations omitted).

The attendant question presented is which party has the burden of moving forward with proof?

In Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970), cert. granted, 403 U.S. 917, 91 S.Ct. 2226, 29 L.Ed.2d 694 (1971), the plaintiff, a professor, was employed by Odessa Junior College, a Texas state institution, but was not offered a renewal of his contract for what would have been his fifth year on the faculty. The college had no tenure system. Sindermann complained that his First and Four-

teenth Amendment rights of expression, association and petition had been violated. Sindermann's complaint urged that his nonrenewal was retaliation against him for his expressions of opinion, that he was a competent classroom teacher, that he had not been given a hearing in connection with his nonrenewal, that the action taken against him had a chilling effect upon the other professors at Odessa College, and that he had been damaged professionally by the nonrenewal of his teaching contract. He sought compensatory and punitive damages, attorney fees, a declaratory judgment adjudicating that the Regents' action had violated his constitutional rights, that he was entitled to a hearing under suggested procedural guidelines, and a mandatory injunction requiring his reinstatement for the academic year 1969–1970. Defendants named were the Board of Regents and the college president, individually and in their official capacities. The defendants all moved for summary judgment which was granted by the district court and on appeal to the Fifth Circuit the same was reversed.

The Fifth Circuit cited its earlier case, Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969), which aligned the Fifth Circuit with the Fourth Circuit, Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), and in opposition to the Tenth Circuit, Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969). The *Pred* case is quoted as follows:

> Equally unpersuasive is the related argument that since there is no constitutional right to public employment, school officials only allowed these teachers' contracts to expire, and thus they cannot be liable for a violation of any rights protected by § 1983. But in the posture of this case this misconceives the whole thrust of their claim. The right sought to be vindicated is not a contractual one, nor could it be since no *right* to reemployment existed. What is at stake is the vindication of constitutional rights— the right not to be punished by the State or to suffer retaliation at its hand because a public employee persists in the exercise of First Amendment rights. (430 F.2d at 942, 415 F.2d at 856).

The court further said that even though Sindermann was absent from his college post without permission of the appropriate authorities, the question turns to whether the college refused to renew his contract on an impermissible basis, for example, as reprisal for his exercise of constitutionally protected rights. The findings of fact and conclusions of law of the district court demonstrated that Odessa College had no tenure system and that the plaintiff knew he did not have tenure.

The Fifth Circuit found that procedural due process in Sindermann's case was dependent upon the determination of whether the teacher "had tenure or an *expectancy of reemployment under the policies and practices of the institution.*" 430 F.2d at 943. (Emphasis supplied). The Fifth Circuit believed that the factual development of the record on the point of "expectancy of reemployment" was too meager and scanty to determine whether the same applied to Sindermann. Continuing in its evaluation of Sindermann's position with Odessa College, the Fifth Circuit held that he was entitled to notice and hearing under standards established in that circuit in the case of Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). The Fifth Circuit continued in the *Sindermann* litigation to further hold that if the plaintiff did not have an "expectancy of reemployment," then a different procedure would be indicated. In such situation, it would then be the teacher's burden to both initiate the proceedings and to prove that the college was wrong in its act of nonrenewal. As to this phase of the case, the court stated that it is incumbent upon the teacher because the college had the right to base its decision not to reemploy him—if he did not have tenure or a contractual expectancy of reemployment—upon any reason or upon no reason at all, citing Bo-

mar v. Keyes, 162 F.2d 136 (2d Cir. 1947).

As *Sindermann* would relate to the position of the plaintiffs in this case, it is without question that they do not possess tenure, and after the facts and circumstances of employment related to and known by the plaintiffs throughout their time of association with Fairmont State College, they did not have, nor could they have had, a "reasonable expectancy of reemployment" beyond the period covered by their existing contract.

An example of teachers who did not have an expectancy of reemployment is illustrated by Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969). The provisions under which plaintiffs here were hired outlined their rights as nontenured teachers and permitted the college to renew or not renew at the discretion of the appropriate officer. At page 1329 the court related: "The provision (of employment) specifically denies an expectancy to continued employment. . . ."

Here, the plaintiffs had neither by contract, nor by board policy or tradition, the right to have their contracts renewed or to otherwise hold or possess a "reasonable expectancy of reemployment." It is thus their burden to present on these motions for summary judgment a specific and definite showing as to the existence of competent evidence of material facts raising genuine issues in support of their claim of arbitrariness, capriciousness or deprivation of constitutionally protected rights. If this cannot be done, or is not done, then summary judgment must be granted defendants.

Summarized, plaintiffs in this litigation must at this point and time of the litigation disclose their evidence supportive of their contention that the nonrenewal of their teaching contract was arbitrary and capricious or in retaliation for their exercise of constitutionally protected rights.

In this regard Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, is worthy of consideration:

Petitioner argued that although she had no knowledge of an agreement (i. e., a conspiracy to refuse her food service in a restaurant and to arrest her) between Kress and the police, the sequence of events created a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses.

In *Kress*, the noncircumstantial evidence referred to was the presence of police officers in the restaurant of defendant Kress, immediately prior to the time petitioner was refused food service and thereupon arrested.

In this case, no such circumstantial evidence exists. It possibly could be argued that the circumstances of plaintiffs' activities prior to the nonrenewal of their contracts, is demonstrated by the affidavits that have been filed by the plaintiffs in this case, were such that the constitutional permissibility of the defendants' actions of nonrenewal could be established only by testimony from adverse witnesses, i. e., the testimony of the defendants, that the action of the defendants in nonrenewal was based on constitutionally permissible grounds, or, perhaps stated in another way, that the actions of nonrenewal were based on other than constitutionally impermissible grounds.

As developed by the record in this case, the denial of defendants' motion for summary judgment would shift the burden to the defendants to establish and prove that the nonrenewal of the teaching contract, as to each of these plaintiffs, was not associated or in any way tainted with arbitrary and capricious official action and was not associated with any constitutional right available to each of the plaintiffs. This would, under the facts of this case, be an unjustifiable

burden upon the school officials in proving good faith dealing with the members of their faculty. Here it is just as reasonable to assume that economic reasons are responsible for the nonrenewal as is the "suspected" First Amendment retaliation.

In any event, the focal point of the necessary conclusion is that the plaintiffs must be able to demonstrate a constitutional deprivation; they must be able to prove their case.

 The well developed record now before the Court demonstrates that plaintiffs only "suspect" their nonrenewal was due to their association with constitutionally permissible activities. Such a showing is not, in this Court's judgment, sufficient and adequate reason for the continuance of this litigation in face of the pending motion for summary judgment filed by defendants.

For the reasons expressed, the Court determines that:

 1. The plaintiffs' contracts of employment and the defendants' policies regarding faculty probation, tenure, dismissal, etc., govern plaintiffs' employment and the circumstances and conditions of employment of plaintiffs in this case, and accordingly do not require or compel a statement of reasons for action of nonrenewal of plaintiffs' teaching contracts; that under the existing policies, conditions and terms of employment plaintiffs, under the showing as made in this action, are not entitled to a constitutional hearing on the action of nonrenewal either before or after the action is taken by the school officials.

2. The facts and circumstances of the litigation before this Court are not adaptable to the conclusion that these plaintiffs could have possessed a "reasonable expectancy of reemployment," but were employed provisionally and without any of the rights, privileges and procedures that are attendant to tenured faculty members.

3. The allegations of the plaintiffs that the action of nonrenewal of their teaching contracts was a denial of procedural due process, or otherwise constitutionally impermissible, entitles and, indeed, obligates plaintiffs to bring forward proof of such charges.

4. Upon consideration of defendants' motion for summary judgment and the record of all parties in this action, the record fails to disclose or reflect facts suggestive of plaintiffs' allegations that the nonrenewal action of defendants was either arbitrary, capricious or in retaliation for plaintiffs' exercise of constitutionally permissible rights and activities, and thus this is a proper case for the granting of a motion for summary judgment in favor of the defendants.

Accordingly, an order may be presented for entry that will grant the defendants' motion for summary judgment, overrule plaintiffs' motion for summary judgment, overrule defendants' motion for dismissal, and overrule plaintiffs' motion for injunctive relief.

In view of the action reflected herein, it is unnecessary now to further consider pending, unresolved matters.